**SO ORDERED.**

**SIGNED this 18 day of April, 2013.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION**

IN RE:

GENE EXPRESS, INC,

 DEBTOR.

CASE NO. 10–08432–8–JRL

CHAPTER 7

JAMES B. ANGELL, CHAPTER 7 TRUSTEE,

 PLAINTIFF,

   v.

ACCUGENOMICS, INC., EMAN 1, LLC, RONALD B. MCNEILL, NIKOLAOS V. LAZARIDIS, GERALD JOHN VARDZEL, JR., JOHN C. ANDERS, TEDS ENTERPRISES, INC., ALFRED C. POLLOCK, III, PAUL ANTONUCCI, JOSEPH LORUSSO, BRYAN PYLES, UNIVERSITY OF ROCHESTER, AND UNIVERSITY OF TOLEDO,

 DEFENDANTS.

ADVERSARY PROCEEDING
NO. 12–00284–8–JRL

1

**ORDER**

This matter came before the court on the motions to dismiss this adversary proceeding for failure to state a claim upon which relief can be granted, filed by Paul Antonucci ("Antonucci"), Joseph LoRusso ("LoRusso") and Bryan Pyles ("Pyles"), which James B. Angell ("trustee") has opposed. A hearing was held on March 14, 2013 in Raleigh, North Carolina.

**BACKGROUND**[1]

Gene Express, Inc. ("debtor"), a Colorado corporation, was organized in September 1992 to pursue and acquire the commercial rights of specific scientific advances made in the medical genetics field and provide genomic data accelerating drug and molecular diagnostic development. The debtor raised in excess of $11,000,000.00 from investors to pursue development and validation of gene expression quantification tests that would allow healthcare professionals to identify individuals with the risk of developing lung cancer. Between 2002 and 2005, the debtor entered into license agreements with the University of Toledo and the University of Rochester, under which certain patent rights were licensed to the debtor in exchange for shares of stock in the debtor and royalty payments.[2]

The debtor's board of directors consisted of Alfred C. Pollack, III ("Pollack"), Gerald John Vardzel, Jr. ("Vardzel"), Antonucci, LoRusso and Pyles. The debtor's directors resided in Florida,

---

[1] These facts are a distillation of the allegations in the complaint, which is viewed in a light most favorable to the trustee. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

[2] On August 20, 2002, the University of Rochester and the debtor executed a consent to transfer of license agreement under which certain patent rights were licensed to the debtor. The Medical University of Ohio at Toledo, predecessor to the University of Toledo, executed an amended and restated license agreement in favor of the debtor on October 11, 2005, granting the debtor a license in patents and rights thereunder.

Colorado, South Carolina and Ohio. Antonucci and LoRusso are residents of Steamboat Springs, Colorado and as of the petition date, remained on the board of directors. Vardzel, a resident of Mount Pleasant, South Carolina, served as a director and the debtor's chief executive officer until January 31, 2010. Pyles served as a director until October 4, 2010. Pyles is a resident of Ohio and is also employed by the University of Toledo as an associate vice president. Meetings of the board of directors, however, were infrequent and erratic.

Since January 1, 2008, Pollack has served as the chairman of the board of directors. In that capacity, Pollock frequently acted without the authorization of the remaining directors and exercised control over the debtor's bank account at Wachovia Bank, N.A. ("Wachovia bank account"). Between 2007 and the petition date, Pollock issued checks payable to himself and drawn on the Wachovia bank account totaling $1,266,801.06, which can be summarized as follows:

| Time Period | Amount |
| --- | --- |
| Between October 14, 2007 and October 13, 2008 | $926,168.38 |
| Between October 14, 2008 and October 13, 2009 | $271,803.41 |
| Between October 14, 2009 and October 13, 2010 | $68,829.00 |

Between 2008 and 2009, Ronald B. McNeill ("McNeill") acquired 6.3% of the outstanding shares of the debtor. As of the petition date, McNeill and his family were the fourth–largest group of shareholders, holding approximately 4,750,000 of the outstanding shares issued by the debtor. McNeill is the sole managing member of Eman 1, LLC ("Eman 1") and Eman 2, LLC ("Eman 2"), which are North Carolina limited liability companies organized on June 7, 2010 and October 10, 2010, respectively.

In 2008 the debtor's operations were relocated from Ohio to Wilmington, North Carolina,

3

prompting the hiring of Vardzel as its chief executive officer and Nikolaos V. Lazaridis ("Lazaridis") as its president to conduct and oversee its business operations in the Wilmington area. Lazaridis, a resident of New Hanover County, North Carolina, served as the debtor's president until January 31, 2010; thereafter, Lazaridis continued to serve as a consultant, holding himself out as having the authority to communicate and consummate financial transactions with third parties on the debtor's behalf. John C. Anders ("Anders"), a resident of Boone County, Missouri is the debtor's former vice president and had signatory authority over the debtor's North Carolina bank accounts.

On February 18, 2008, the debtor entered into a commercial lease agreement with The Hansberry Corporation, now known as TEDS Enterprises, Inc. (collectively "TEDS"), to lease laboratory and office space located at 1410 Commonwealth Drive, Suite 105, Wilmington, North Carolina. The debtor defaulted under the lease beginning in November 2009, which prompted the notice of default issued to the debtor on February 22, 2010. The notice, which was hand–delivered to Lazaridis, demanded that the debtor vacate the premises immediately. Thereafter, TEDS obtained an order of summary ejectment against the debtor and, the New Hanover County Sheriff served Lazaridis with notice of a writ of possession of the premises on April 12, 2010. Between April 19, 2010 and April 29, 2010, Pollock continued to negotiate with TEDS regarding further use of the premises, indicating that the debtor had several projects nearing completion and requesting that it be allowed to store its personal property at the premises until the debtor obtained proper funding.

On May 7, 2010, Pollock sent correspondence to Vardzel, Lazaridis, Antonucci and LoRusso indicating that Stephen Kallabis ("Kallabis") was attempting to acquire the debtor's assets and intellectual property to the exclusion of current shareholders and creditors. Realizing that

4

reorganization of the debtor would be fortuitous, McNeill, Lazaridis and Vardzel began negotiating with TEDS to purchase the debtor's assets clear of the claims of existing equity holders and claimants in May 2010.  Unbeknownst to Pollock and despite his involvement with McNeill and Vardzel in the negotiations with TEDS, Lazaridis continued to communicate and actively participate in the business operations of the debtor.  On May 25, 2010, Pollock received correspondence from an attorney representing one of the shareholders of the debtor, Global Equity Trading & Finance, Inc. ("Global Equity"), proposing an infusion of new capital that would allow the debtor to restructure its debt.

Despite the ongoing negotiations regarding the lease of the premises, TEDS sold Eman 1 the portion of personal property left by the debtor at the premises and deemed abandoned for $52,500.00 on June 18, 2010.  The purchase price, $52,500.00, is the amount owed by the debtor under the lease through June 18, 2010, which is substantially less than the value of the personal property.  The debtor's personal property purchased by Eman 1 was subsequently transferred to Eman 2.

Between July 2010 and October 2010, Pollock made continuous efforts to reorganize the debtor and even sought the assistance of the University of Toledo.  During this time, however, Eman 2 was actively negotiating with the University of Toledo to acquire the patent rights that were previously licensed to the debtor.  On October 19, 2010, the management of Eman 2, predecessor–by–merger to Accugenomics, Inc. ("Accugenomics"),[3] met with James Willey, a representative of the University of Toledo, to discuss the possibility of acquiring the patent rights currently licensed to the debtor.  The University of Toledo, however, ceased all negotiations with

---

[3]Accugenomics, successor to Eman 2, provides gene expression tests that accurately diagnose, monitor and inform cancer treatment, including BCR ABL for Chronic Myelgenous Leukemia and lung cancer risk and diagnostic tests.

5

Accugenomics regarding the patent licenses on November 15, 2010.

Pursuant to § 303 of the Bankruptcy Code, McNeill, Lazaridis, Anders and Vardzel (collectively "petitioning creditors") filed an involuntary petition against the debtor under chapter 7 of the Bankruptcy Code on October 14, 2010. On October 15, 2010, the petitioning creditors filed a motion seeking the appointment of an interim trustee pursuant to § 303(g). Appointment of an interim trustee, according to the petitioning creditors, was necessary to safeguard and cultivate for the benefit of the debtor's creditors and investors its only asset, intellectual property. Additionally, the motion indicated that "the [p]etitioning [c]reditors have taken steps to safeguard and preserve the debtor's intellectual property, and will continue to do so for the benefit of the estate and the trustee." These representations by the petitioning creditors, according to the complaint, were misleading and disguised their true purpose, which was to utilize bankruptcy to stage a takeover of the debtor's assets and the patent rights licensed to it by the University of Toledo and the University of Rochester.[4] The order for relief was entered and the trustee was appointed on November 12, 2010.

On November 4, 2010, the University of Rochester sent the debtor correspondence purporting to terminate the patent licensing agreement with the debtor due to its pending bankruptcy. The University of Toledo, as of November 10, 2010, took the position that any rights the debtor had to the patents under the licensing agreement were terminated as of October 31, 2010. Believing that all these licensed patent rights had been terminated by the University of Toledo and the University of Rochester, the petitioning creditors filed a motion to dismiss the debtor's bankruptcy case on

---

[4]It is further alleged that during this time, the petitioning creditors were conspiring with third parties, including Kallibus, to acquire the debtor's business and intellectual property, to the exclusion of its creditors and shareholders.

6

November 15, 2010. The motion to dismiss stated that pursuit of relief under the Bankruptcy Code was no longer in the best interests of all parties involved and, therefore, requested that the case be dismissed. The motion to dismiss, however, was subsequently withdrawn by the petitioning creditors on December 30, 2010.

The multi–count complaint initiating this adversary proceeding was filed by the trustee on November 11, 2012, naming Antonucci, LoRusso and Pyles as defendants in Count IV, which sought damages arising from the breach of their fiduciary duties.[5] After receiving several extensions of time to answer or otherwise respond, Anonucci and LoRusso filed a motion to dismiss this adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(6) on January 11, 2013. Thereafter on February 13, 2013, Pyles filed a motion to dismiss and supporting memorandum of law seeking dismissal pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6). The trustee filed a response and memorandum of law opposing the motions to dismiss on January 31, 2013 and February 14, 2013, respectively.[6]

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 8(a)(2), every pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. A party may move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss a claim for relief in any pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. A motion to dismiss tests the

---

[5]Count IV of the complaint also alleges that Vardzel, as a director, and Pollock, in his capacity as the chairman of the board of directors, breached their fiduciary duties to the debtor.

[6]In both responses, the trustee incorporated by reference the memorandum of law filed in support of his response opposing the motion to dismiss filed by McNeill.

7

legal and factual sufficiency of the complaint. Id.; Jones v. McNutt Serv. Grp., Inc., No: 5:10–CV–84, 2010 WL 3733027, at *1 (E.D.N.C. July 23, 2010) ("In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for 'failure to state a claim upon which relief can be granted,' a court must determine whether the complaint is legally and factually sufficient." (citations omitted)). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Angell v. Ber Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 745 (Bankr. E.D.N.C. 2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677–78 ("[W]here the well–pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (citation omitted)); accord Twombly, 550 U.S. at 570. (emphasizing that a pleading providing "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citation omitted)). The court "take[s] the facts in the light most favorable to the plaintiff," however, it "need not accept the legal conclusions drawn from the facts [or] unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quotations omitted). The court, in analyzing a Rule 12(b)(6) motion to dismiss, consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Under North Carolina's choice–of–law rules, the substantive law of the state of incorporation governs suits involving "[the] corporation's internal affairs—matters peculiar to the relationships

8

among or between the corporation and its current officers, directors, and shareholders . . . ." Haberland v. Bulkeley, ___ F. Supp. 2d ___, ___, 2012 WL 4788442, at *8 (E.D.N.C. Sept. 26, 2012) (quoting Bluebird Corp. v. Aubin, 188 N.C. App. 671, 680–81, 657 S.E.2d 55, 63 (2008)); N.C. Gen. Stat. § 55–7–47 (stating that "[i]n any derivative proceeding in the right of a foreign corporation, the matters covered by th[e North Carolina Business Corporation Act] shall be governed by the laws of the jurisdiction of incorporation of the foreign corporation . . . ."); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4–5 (1975) (per curiam).  The debtor is incorporated under the laws of Colorado and, therefore, Colorado substantive law governs the scope and any purported breach of the fiduciary duties of its directors. See Haberland, 2012 WL 4788442, at *8.

## DISCUSSION

Antonucci, LoRusso and Pyles, in their motions to dismiss, assert that this adversary proceeding should be dismissed because the complaint and allegations therein fail to plausibly demonstrate that they breached their fiduciary duty to the debtor under Colo. Rev. Stat. § 7–108–401(a).  Alternatively and assuming they breached their fiduciary duties to the debtor, the complaint lacks specific allegations or facts demonstrating, with plausibility, how convening a meeting of the board of directors would have avoided or delayed the impending failure of the debtor by procuring further investment in the debtor.  The absence of plausible facts demonstrating that any such breach was the proximate cause of damages suffered by the debtor, according to Antonucci, LoRusso and Pyles, prevents the trustee from asserting a claim for breach of fiduciary duty upon which relief may be granted.

The Colorado Business Corporations Act, Colo. Rev. Stat. § 7–101–101 et seq., is modeled

9

after the Model Business Corporation Act. Colo. Rev. Stat. § 7–101–101.[7] A cardinal principle of corporate law, observed by the State of Colorado, is that "all corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under direction of, the board of directors . . . ." Colo. Rev. Stat. § 7–108–101(2). Section 7–108–401, describing the general standards of conduct for directors of a corporation, provides as follows:

> (1) Each director shall discharge the director's duties as a director, including the director's duties as a member of a committee, and each officer with discretionary authority shall discharge the officer's duties under that authority:
>
> (a) In good faith;
>
> (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
>
> (c) In a manner the director or officer reasonably believes to be in the best interests of the corporation.
>
> (2) In discharging duties, a director or officer is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:
>
> (a) One or more officers or employees of the corporation whom the director or officer reasonably believes to be reliable and competent in the matters presented;
>
> (b) Legal counsel, a public accountant, or another person as to matters the director or officer reasonably believes are within such person's professional or expert competence; or
>
> (c) In the case of a director, a committee of the board of directors of which the director is not a member if the director reasonably believes the committee

---

[7] See, e.g., Pueblo Bancorporation v. Lindoe, Inc., 63 P.3d 353, 368 (Colo. 2003) (finding the interpretative views of the Model Business Corporations Act persuasive because the Colorado General Assembly has consistently relied upon it in drafting the corporate laws of Colorado); Copper Mount. Inc. v. Poma of Am., Inc., 890 P.2d 100 (Colo. 1995) (emphasizing that the intent of the authors of a model act, which has been adopted in Colorado, will be presumed to be the same as the intent of the Colorado General Assembly).

>merits confidence.
>
>(3) A director or officer is not acting in good faith if the director or officer has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (2) of this section unwarranted.
>
>(4) A director or officer is not liable as such to the corporation or its shareholders for any action the director or officer takes or omits to take as a director or officer, as the case may be, if, in connection with such action or omission, the director or officer performed the duties of the position in compliance with this section.
>
>(5) A director or officer of a corporation, in the performance of duties in that capacity, shall not have any fiduciary duty to any creditor of the corporation arising only from the status as a creditor.

Colo. Rev. Stat. § 7–108–401. Directors are required "to act with loyalty toward the corporation and with an 'extreme measure of candor, unselfishness, and good faith.'" Kim v. Grover C. Coors Trust, 179 P.3d 86, 91 (Colo. Ct. App. 2007) (quoting Kullgren v. Navy Gas & Supply Co., 135 P.2d 1007, 1010 (Colo. 1943)); see Van Schaack Holdings, Ltd. v. Van Schaack, 867 P.2d 892, 897 (Colo. 1994) (en banc) ("This [fiduciary] duty encompasses the requirement that directors of a corporation . . . act with an extreme measure of candor, unselfishness, and good faith in relation to the remaining shareholders."). Corporate directors owe a fiduciary duty to the corporation and its shareholders. See, e.g., Stat–Tech Int'l Corp. v. Delutes (In re Stat–Tech Int'l Corp.), 47 F.3d 1054, 1059 (10th Cir. 1995) ("Corporate directors . . . also act as a fiduciary of the corporation itself." (citations omitted)); Michaelson v. Michaelson, 939 P.2d 835, 841 (Colo. 1997) (en banc); Kullgren, 135 P.2d at 1010 (holding that directors breached their fiduciary duty by exercising powers under a voting trust for their personal advantage and to the detriment of shareholders); River Mgmt. Corp. v. Lodge Props. Inc., 829 P.2d 398, 401 (Colo. Ct. App. 1991) ("Directors of a corporation have a fiduciary

11

duty to protect the stockholders' interests and are required to discharge this duty in good faith.").[8]

---

[8] In certain circumstances, directors also "owe both statutory and common law duties to the corporation's creditors." Alexander v. Anstine, 152 P.3d 497, 501 (Colo. 2007) ("Under the common law, when a corporation becomes insolvent, a duty arises in its directors and officers to the corporation's creditors." (citing Crowley v. Green, 365 P.2d 230, 232–33 (Colo. 1961))); see, e.g., Ficor, Inc. v. McHugh, 639 P.2d 385, 393–94 (Colo. 1982) (finding that a corporate director has the statutory duty not to vote for shareholder distributions that would preclude payment of debts owed to corporate creditors); New Crawford Valley, Ltd. v. Benedict, 877 P.2d 1363, 1368–69 (Colo. Ct. App. 1993) (holding that the directors of an insolvent corporation owe a duty to creditors not to transfer corporate property for their own benefit); Collie v. Becknell, 762 P.2d 727, 731 (Colo. Ct. App. 1988) (holding that the directors of an insolvent corporation have a duty to the corporation's creditors not to divert corporate property for their own personal benefit).  This limited duty directors owe to corporate creditors of an insolvent corporation conflicts with Colo. Rev. Stat. § 7–108–401(5), which provides that "a director . . . of a corporation, in the performance of duties in that capacity, shall not have any fiduciary duty to any creditor of the corporation arising only from the status as a creditor."  McCallum Family LLC v. Winger, 221 P.3d 69, 80 (Colo. Ct. App. 2009) (highlighting the conflict).  The Colorado Supreme Court in Alexander, however, expressed "no opinion on whether [Colo. Rev. Stat. § 7–108–401(5), as amended in 2006,] applies where a corporation is insolvent."  Alexander, 152 P.3d at 502 n. 9 (concluding that it need not address the statutory provision because it did not apply to the facts of the case).  After reviewing the Crowley, Collie and New Crawford Valley, Ltd. decisions, the Colorado Supreme Court stated that "[i]n the context of a breach of fiduciary duty claim . . . creditor claims are limited to cases where officers or directors have favored their interests over creditors' claims."  Alexander, 152 P.2d at 503; see In re MS55, Inc., 420 B.R. 806, 819–20 (Bankr. D. Colo. 2009) ("Under Colorado law . . . directors of an insolvent corporation owe a limited duty to creditors not to favor their interests at the expense of creditors." (citation omitted)); but see Kirzhner v. Silverstein, No. 09–CV–02858, 2011 WL 4382560, at *8 (D. Colo. Sept. 20, 2011) (holding "that the Colorado legislature's intent in adopting Colorado Revised Statute 7–108–401(5) is unclear, and therefore the statute is not properly read as abrogating the common law rule that directors of insolvent corporations owe a limited fiduciary duty to the corporation's creditors.").

This limited duty owed to a corporation's creditors, according to the Alexander Court, is consistent with the law of other states, including North Carolina.  152 P.3d at 503 n.10 (citing Keener Lumber Co. v. Perry, 149 N.C. App. 19, 560 S.E.2d 817, 824 (2002)).  In Keener Lumber Co., the North Carolina Court of Appeals held, in the context of the appropriateness of a particular instruction to the jury, that:

> [O]nce a director's fiduciary duty to creditors arises, a director is generally prohibited from taking advantage of his intimate knowledge of the corporate affairs and his position of trust for his own benefit and to the detriment of the creditors to whom he owes the duty.  The jury should also be instructed that, once the fiduciary

12

A corporate director "must protect the rights of the company and act openly, and must manage the corporate affairs in good faith, within the limits of the applicable law, and give the corporate entity the benefit of his best judgment and care." Astarte, Inc. v. Pacific Indus. Sys., Inc., 865 F. Supp. 693, 705 (D. Colo. 1994) (citation omitted).

To state claim for breach of fiduciary duty under Colorado law, "a plaintiff must allege that a fiduciary duty existed, the defendant breached that duty, and the breach was the proximate cause of damages." Mandelbaum v. Fiserv, Inc., 787 F. Supp. 2d 1226, 1240 (D. Colo. 2011) (citing Aller v. Law Office of Carole C. Schriefer, 140 P.3d 23, 26 (Colo. Ct. App. 2005)). The causation element "is satisfied when the plaintiff proves that the defendant's conduct was a substantial contributing cause of the injury." Aller, 140 P.3d at 26 (citing Rupert v. Clayton Brokerage Co., 737 P.2d 1106, 1112 (Colo. 1987)).

In support of Count IV of the complaint, the trustee contends that Antonucci, LoRusso and Pyles, in their capacity as directors, breached their fiduciary duty to act as an ordinary prudent person would under similar circumstances and in a manner they reasonably believed to be in the best interests of the debtor in violation of Colo. Rev. Stat. § 7–108–401(a). Notwithstanding the severity of the debtor's financial problems and the willingness several investors expressed in making additional capital contributions to reorganize the debtor's operations, the board of directors failed to convene a meeting to develop a strategy to preserve the debtor's assets or entertain the additional capital contributions advanced by these potential investors. According to the complaint, Antonucci,

---

duty arises, a director must treat all creditors of the same class equally by making any payments to such creditors on a pro rata basis.

149 N.C. App. at 33, 560 S.E.2d at 826–27 (internal citations omitted).

LoRusso and Pyles also breached their fiduciary duty by failing to review or authorize distributions Pollock made to himself from the Wachovia bank account during the three–year period preceding the petition date. By violating their fiduciary duties, Antonucci, LoRusso and Pyles have caused the debtor damages in excess of $10,000.00. The amount alleged to have been inappropriately taken by Pollock, $1,266,801.06, far exceeded the amount of the default under the lease ($52,500.00) that led to the sale of the debtor's personal property.

Relying on Colo. Rev. Stat. § 7–108–201, which governs meetings and actions of the directors, Antonucci and LoRusso contend that the debtor was not required to hold meetings of the board of directors. Their reliance, however, is misplaced. Colo. Rev. Stat. § 7–108–201(1) states that "[t]he board of directors may hold regular or special meetings in or out of this state." This statutory provision merely authorizes meetings of a corporation's board of directors to be held in or outside of Colorado, absent a conflicting provision in the articles of incorporation. Humphreys v. Mooney, 5 Colo. 282, 294–95 (1880).

When viewed in a light most favorable to the trustee, the court finds that the complaint and the allegations therein support a plausible inference that Antonucci, LoRusso and Pyles owed the debtor a fiduciary duties under Colorado law, see Colo. Rev. Stat. § 7–108–401, which were breached when they "fell asleep at the wheel." Antonucci, LoRusso and Pyles did not exercise the care an ordinarily prudent person in a similar position would under the same circumstances nor did they act in a manner each reasonably believed to be in the best interests of the debtor. As non–management directors, Antonucci, LoRusso and Pyles are not expected to devote all of their time and attention to the debtor, See Astarte, 865 F. Supp. at 706 (suggesting that "[n]on–management directors are not expected to devote all of their time and attention to a single

corporation and indeed are often selected because of their connection with another business enterprise."); however, every director must stay abreast of and actively participate in all issues and decision–making processes related to the debtor. See, e.g., Colo. Rev. Stat. § 7–108–401(a)(4) ("A director . . . is not liable as such to the corporation or its shareholders for any action the director . . . takes or *omits to take* as a director . . . if, in connection with such action or omission, the director . . . performed his duties of the position in compliance with this section." (emphasis added)); Clarkson Co. v. Shaheen, 660 F.2d 506, 512 (2d Cir. 1981) (emphasizing, under New York law, that "directors have an affirmative duty to inform themselves about the affairs of the corporation."); Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l, Inc.), 208 B.R. 288, 305 (Bankr. D. Mass. 1997) ("The duty of care includes a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them. The more significant the subject matter of the decision, the greater is the requirement to probe and consider alternatives." (footnote and citations omitted)).  These directors were made aware of the threats posed by Kallabis and his efforts to divest present shareholders of their interests and realize the debtor's operations and intellectual property for himself as early as May 7, 2010. Their failure to take any action to ensure the debtor's continued viability, the inattention paid to the debtor's operations, and the failure to appropriately monitor Pollack's activities as chairman were substantial factors contributing to the damages suffered by the debtor. Dismissal of Count IV of the complaint is therefore inappropriate with respect to Antonucci, LoRusso and Pyles.

## CONCLUSION

Based on the foregoing, the trustee's complaint states claims against Antonucci, LoRusso and Pyles for breach of their fiduciary duty with the plausibility required by Fed. R. Civ. P. 8(a) and

Fed. R. Bankr. P. 7008 and is not subject to dismissal under Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012.  Accordingly, their motions to dismiss are **DENIED.**

**END OF DOCUMENT**